# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re POINT CENTER FINANCIAL, INC., <br>     Debtor. | SACV 20-663 DSF |
| RICHARD M. KIPPERMAN, <br>     Appellant, <br><br> v. <br><br> HOWARD B. GROBSTEIN, <br>     Appellee. | OPINION |

    The parties are again before this Court on appeal of the Bankruptcy Court's decision that Appellant did not establish, by a preponderance of the evidence, that a certain transfer of rights occurred after Appellant's lien attached to those rights. For the reasons stated below, the decision of the Bankruptcy Court is AFFIRMED.

## I. Background and Decision Below

    Appellant Richard Kipperman is a court-appointed post-judgment receiver attempting to enforce a state court judgment in favor of certain creditors ("Brewer judgment" and "Brewer creditors" respectively) against Debtor Point Center Financial, Inc. The funds in question are certain management and servicing fees paid to Point Center for pre-petition services by a related entity (the "Jack Rabbit fees"). The right to collect those fees was assigned by Point Center's principal, Dan Harkey, pre-petition from Point Center to a different entity also

controlled by Harkey, but the money was eventually recovered by the bankruptcy estate through an action to avoid the transfer. The central question before the Bankruptcy Court was whether the liens held by the Brewer creditors attached to the Jack Rabbit fees prior to the right to collect the fees being assigned to the other entity.

The Bankruptcy Court had previously found against Appellant on this issue, and this Court affirmed. The Ninth Circuit affirmed much of the decisions but reversed in part, finding that the Bankruptcy Court did not adequately explain why it believed that the evidence was too "murky" to allow it to fix an assignment date later than the date the liens attached. However, the Ninth Circuit's mandate establishes two important points: that the earliest liens became effective on March 16, 2012, and that Appellant has the burden of showing when the assignment became effective.

After reviewing the evidence again on remand and issuing an extensive written discussion of the evidence, the Bankruptcy Court again found that Appellant had not met his burden of showing that the assignment took place after March 16, 2012. The Bankruptcy Court freely acknowledged that there was evidence that the assignment took place sometime after March 16, but it also pointed to substantial evidence that Harkey had manifested an intention to make the assignment at least a month prior to March 16. Finding the evidence "in equipoise," the Bankruptcy Court found that it was not convinced that the assignment was after March 16, 2012, and therefore ruled against Appellant.

## II. Standard of Review

The timing of the assignment in this case involves resolution of questions of fact. The bankruptcy court's factual findings are reviewed for clear error. Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000). "Clear error exists when, although there is evidence to support the lower court's conclusion, the reviewing court is left with the definite and firm conviction that a mistake has been

made." In re Adamson Apparel, Inc., 785 F.3d 1285, 1291 (9th Cir. 2015).

## III. Analysis

### A. The Bankruptcy Court Did Not Clearly Err in Finding that Appellant Did Not Meet His Burden of Proof

Appellant focuses his argument on when a formal written assignment was executed. But the Bankruptcy Court found, as a matter of California law, that a written document was not required and, instead, "it is enough if the assignor has, in some fashion, manifested an intention to make a *present* transfer of his rights to the assignee." AR 34 (emphasis in original) (quoting Hearn Pac. Corp. v. Second Generation Roofing, Inc., 247 Cal. App. 4th 117, 149 (2016)). Appellant does not directly challenge this legal conclusion.[1]

The Bankruptcy Court found that the crux of the problem was that, while there was fairly clear evidence that Harkey had manifested an intention to make the assignment prior to March 16, 2012, it was not clear if that was a "present intention" rather than something he wanted to do at some point in the future. See id. The only hard evidence of the timing of the assignment is that Harkey's attorney, Dale Martin, e-mailed a draft written assignment to Harkey on March 15, 2012, and Martin testified that Harkey had asked him to prepare the assignment within a month prior to that e-mail. The Bankruptcy Court found that there was also metadata from Microsoft Word files showing that draft assignments may have been started as early as December 2011. AR 36. Martin testified that the written assignments were executed sometime after March 2012 but admitted that he was unaware of the exact date.

---

[1] Appellant's argument largely proceeds from an implicit assumption that the date of the execution of the written assignment controls, but Appellant never makes that position explicit or provides any legal argument in support of it. Appellant also does not raise the presence of any issues of law in his recitation of the standard of review.

As with its first attempt at resolving this dispute, it is clear from the record that the Bankruptcy Court was frustrated with the inconclusiveness of the evidence. The Bankruptcy Court was satisfied that Harkey was at least seriously considering the assignment prior to March 16, 2012, but the record was hopelessly unclear if he had established a "present intention" to make the assignment at that point. Left with that record, the Bankruptcy Court concluded that because Appellant bore the burden of proof, Appellant lost.

The Court cannot say that the Bankruptcy Court clearly erred in finding that Appellant had not met his burden of proving, by a preponderance of the evidence, that the assignment became effective under California law prior to March 16, 2012. There is little question that the Bankruptcy Court could have found that the assignment took place after that date. Perhaps most courts would have found that the weight of the evidence supported that conclusion. But the evidence is not so strongly in favor of Appellant's position to leave this Court "with the definite and firm conviction" that the Bankruptcy Court erred in finding the record inconclusive. And if the finder of fact believes that the record is inconclusive, the party with the burden of persuasion loses. See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 199–200 (2014). In this case, that party is Appellant.

## B. The Bankruptcy Court's Decision is Not Foreclosed by the Estoppel Doctrines Raised by Appellant

Appellant raises several legal doctrines that he claims foreclose the Bankruptcy Court's ruling. None of these arguments are persuasive.

### 1. Issue Preclusion

Issue preclusion was not raised in the Bankruptcy Court, and the Court declines to consider it for the first time on appeal. Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 968 (9th Cir. 2010).

### 2. Judicial Estoppel

Judicial estoppel does not apply either. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by

4

asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted). The doctrine protects "the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.'" Wagner v. Prof'l Eng'rs, 354 F.3d 1036, 1044 (9th Cir. 2004) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990), cert. denied 501 U.S. 1260 (1991)).

The Ninth Circuit has applied a three-prong test to determine whether the application of judicial estoppel is warranted. Hamilton, 270 F.3d 782, quoting from New Hampshire v. Maine, 532 U.S. 742 (2001). First, a party's subsequent position must be "clearly inconsistent" with its earlier position. Second, the party must have succeeded in persuading a court to accept its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Finally, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. (additional citations omitted).

Appellant's judicial estoppel argument involves arguments made by Appellee during the proceedings to avoid the transfer of the Jack Rabbit fees to the other Harkey-controlled entity. The relevant issue in that avoidance proceeding was whether the assignment took place within two years prior to the bankruptcy petition that was filed on February 19, 2013. Appellee argued – and the Bankruptcy Court found – that the assignment took place in "March 2012," well within two years of the petition date.[2] AR 2326-27.

None of the parts of the judicial estoppel test favors estoppel in this case. An argument that the assignment took place in "March 2012" is

---

[2] The primary issue concerning the assignment date in the avoidance action was whether a backdated August 1, 2010 transfer date applied or the date that the assignment actually occurred, which was around March 2012. AR 2326-27.

not clearly inconsistent with Appellant's position in this case. Appellant's position is basically that the assignment took place for the purposes of California law at some time prior to the drafting of the written assignment in mid-March 2012. A vague "March 2012" assignment date is not "clearly inconsistent" with Appellant's present argument.

There is also no perception that the Bankruptcy Court was misled. The precise date of the assignment was simply not important in the avoidance action. All Appellee needed to do was demonstrate that the assignment happened sometime after February 19, 2011. Whether that was March 2012, February 2012, or even December 2011 was immaterial to the outcome of the avoidance action. Similarly, Appellee would derive no unfair advantage if not estopped because the argument in this case is only trying to fix a more precise date to the assignment – an issue that was not presented in the avoidance action and was not particularly relevant there.

### 3. Law of the Case

The law of the case doctrine also does not foreclose the Bankruptcy Court's decision. "The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1042 (9th Cir. 2018). However, "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case" and "[t]he doctrine applies most clearly where an issue has been decided by a higher court." Id. In fact, Federal Rule of Civil Procedure 54(b) explicitly authorizes courts to revise "any order or other decision . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Fed. R. Bankr. P. 7054(a) (Rule 54(a)–(c) apply to adversarial proceedings); id. at 1042-43.

Aside from the fact that the Bankruptcy Court would not bound by the law of the case in any event, the law of the case argument fails for

6

several other reasons. First, it is not even clear that the avoidance action and this case are the "same case" for the purposes of law of the case. They both take place under the auspices of the same bankruptcy proceeding, but they are separate disputes involving different parties for different purposes. Second, as noted above, the two decisions are not incompatible, so it is not obvious that the Bankruptcy Court changed its position. Finally, even if it were a change in position, there was a good reason to do so and there is no reason to find the Bankruptcy Court abused its discretion in doing so. The precise date of the assignment was not important to the avoidance action; it was important to the determination of the status of the Brewer liens. When faced with a more nuanced question about the assignment, the Bankruptcy Court engaged in a more nuanced analysis and came to a more indeterminate conclusion. There was no error in this approach.

## IV. Conclusion

The decision of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

Date: September 8, 2020

_____
Dale S. Fischer
United States District Judge